UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60402-RUIZ/STRAUSS

ANAHY VELASQUEZ,

    Plaintiff,

v.

CARDINAL HEALTH 414 LLC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Motion for Summary Judgment ("Motion") [DE 28]. The Motion was referred to me to take all action as required by law [DE 48]. I have reviewed the Motion, the Response [DE 40] and Reply [DE 42] thereto, all other summary judgment materials, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED**.

## BACKGROUND

Plaintiff worked for Defendant as a driver from July 2014 until October 24, 2019, when her employment was terminated. Defendant's Statement of Undisputed Material Facts ("DEF Stmt.") [DE 29] ¶ 1 (undisputed), ¶ 16.[1] She was responsible for delivering radioactive isotopes to hospitals and clinics. *Id.* ¶ 1. A few months after the termination of her employment, Plaintiff commenced this action against Defendant, asserting two claims under Title VII of the Civil Rights

---

[1] Although Plaintiff responded (though not necessarily completely) to the other paragraphs of Defendant's Statement of Undisputed Material Facts, she did not respond to paragraph 16. Therefore, paragraph 16, which is supported by the record, is deemed admitted, with one immaterial exception ("strenuously disagreed" should be replaced with "didn't seem in agreement").

Act.  In Count I, Plaintiff raises a hostile work environment sexual harassment claim.  In Count II, Plaintiff raises a retaliation claim, which relates (at least in part) to a complaint Plaintiff alleges she lodged regarding the alleged sexual harassment.

The alleged acts of sexual harassment were committed by Rudelmiro Santizo-Perez ("Santizo-Perez").  Santizo-Perez, who was not an employee of Defendant, worked at customer facilities where Plaintiff made deliveries for Defendant, including PET Lynn in Delray Beach, Florida, where the alleged sexual harassment occurred.  On one occasion in 2018 (sometime between July and October), Santizo-Perez entered a small room – a room Plaintiff described as "too small, like for two people" – where Plaintiff was making a delivery.  Deposition of Anahy Velasquez ("PL Depo.") [DE 29-1] at 41-42; [DE 29-1] at 303.  In doing so, Santizo-Perez brushed up behind Plaintiff.  PL Depo. at 40-42.  Plaintiff felt his private parts and did not believe it was an accident.  *Id.* at 42.  This incident occurred once.  *Id.* at 42, 94-95, 114.  Although there were no other instances of physical contact, Plaintiff described other incidents that made her feel uncomfortable.  *Id.* at 42, 95-96.  Specifically, she testified that Santizo-Perez had stared at her while sitting in his car (at least three times) and that on one occasion when she was making a delivery (around September or October 2019), Santizo-Perez adjusted his pants in front of her, which she viewed as a sexual gesture.  *Id.* at 94-102.  Plaintiff claims to have reported the 2018 incident to Katiuska Rodriguez ("Rodriguez"), a supervisor, the day after it occurred.  *Id.* at 43, 123-26.  However, Plaintiff did not report the other alleged incidents to anyone.  *Id.* at 98, 102.

Plaintiff claims she was fired because of the complaint she alleges she made regarding Santizo-Perez sometime in 2018 (between July and October).  While she was not terminated until October 24, 2019, Plaintiff's theory (in Count II) is that Defendant failed to investigate and/or take action regarding her complaint and that Defendant terminated Plaintiff to cover up Defendant's

2

inaction after the media reported Santizo-Perez's arrest, around October 16, 2019, for placing video cameras in ladies' restrooms at one or more hospitals where he worked. *See* Complaint [DE 1] ¶¶ 16-18, 26-31; Response [DE 40].

      Defendant, however, provides evidence to show that Plaintiff was fired due to performance and conduct issues occurring within 12 months after Plaintiff received a Final Written Warning. *See* [DE 29-1] at 433-36. Specifically, in December 2018, Defendant provided a Final Written Warning to Plaintiff, which noted that two final warnings in a 12-month period will result in termination. [DE 29-1] at 433-34. *See also* PL Depo. at 179. The Final Written Warning was provided after Plaintiff damaged a vendor's car washing equipment with her vehicle and left without reporting the accident, contrary to company policy. *See* DEF Stmt. ¶ 4; Plaintiff's Response to Defendant's Statement of Undisputed Facts ("PL Stmt.") [DE 39] ¶ 4; PL Depo. at 179-84; [DE 29-1] at 433-34. While Plaintiff refused to sign the Final Written Warning, [DE 29-1] at 433-34, her summary judgment statement regarding the event only disputes Defendant's assertion that Plaintiff fled the scene; it does not otherwise specifically dispute the facts set forth in Defendant's version of events. *See* PL Stmt. ¶ 4. Regardless, Plaintiff acknowledges leaving because she was running late. PL Depo. at 181.

      Subsequently, on September 24, 2019 (less than 12 months after the Final Written Warning), Plaintiff made a delivery of nuclear waste. However, instead of leaving the "fresh" nuclear waste she brought with her and taking the "used" nuclear waste she was supposed to pick up, Plaintiff accidentally departed with the "fresh" nuclear waste, leaving the "used" nuclear waste behind. She later returned and corrected the error, albeit at a time past when Defendant committed

to making the delivery. The delay interfered with the customer's timely preparation for an early morning appointment.[2]

Because of Plaintiff's delivery error and her involvement in a separate workplace altercation on September 27, 2019 (three days after the delivery error), and because both incidents occurred within 12 months of Plaintiff's Final Written Warning, Defendant asserts it made the decision to terminate Plaintiff's employment. *See* DEF Stmt. ¶¶ 8, 15; PL Stmt. ¶¶ 8, 15; [DE 29-1] at 435-36. Plaintiff's direct supervisor, Jason Cambrelen ("Cambrelen"), participated in the decision to terminate Plaintiff's employment, a decision finalized on October 23, 2019. Declaration of Jason Cambrelen [DE 29-4] ¶ 5. At the time, Cambrelen had never received any complaints or otherwise heard anything regarding Santizo-Perez. *Id.* In fact, the first time Cambrelen heard Santizo-Perez's name was at Plaintiff's deposition (11 months after Plaintiff was terminated). Deposition of Jason Cambrelen ("Cambrelen Depo.") [DE 29-3] at 8. Rodriguez was present when Cambrelen informed Plaintiff of her termination and the reasons therefor, but Rodriguez played no role in the decision to terminate Plaintiff's employment. Rodriguez Depo. at 19-20.

## **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[2] The facts set forth in this paragraph are taken from paragraphs 6 and 7 of Defendant's Statement of Undisputed Material Facts [DE 29] and the portions of the record cited therein. Plaintiff disputes these paragraphs on the sole basis that they imply prejudice when Rodriguez admitted no proof of prejudice exists. PL Stmt. ¶¶ 6-7. But Plaintiff mischaracterizes Rodriguez's testimony. Rodriguez merely testified that she did not know whether Defendant or its customer was prejudiced by the delivery error. Deposition of Katiuska Rodriguez ("Rodriguez Depo.") [DE 29-2] at 29. Defendant, however, has provided evidence of prejudice. *See* [DE 29-1] at 435-36. Regardless, Plaintiff has admitted that the error occurred. PL Depo. at 186.

Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citing *Celotex*, 477 U.S. at 322-23). *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (citing *Celotex*, 477 U.S. at 325)). Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381

F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. 242).  Nevertheless, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted).  Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## ANALYSIS

### I.      COUNT I – SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

Defendant is entitled to summary judgment on Count I.  "Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "Sexual harassment that takes the form of a hostile work environment is actionable under Title VII." *Id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).  Even when it is a third party whose harassment of an employee creates a hostile work environment, the employer may be liable if it fails to act. *Beckford v. Dep't of Corr.*, 605 F.3d 951, 957 (11th Cir. 2010).  However, Title VII is not a "general civility code," and it has demanding standards to ensure that it does not become one. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  Importantly, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.*

To prevail on a hostile work environment claim based on sexual harassment, an employee must establish the following elements:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for

>sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)). *See also Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1286-87 (11th Cir. 2018); *Furcron*, 843 F.3d at 1304-05.

Here, Defendant correctly argues that Plaintiff cannot satisfy the fourth element – the requirement "that the harassment [be] sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Reeves*, 594 F.3d at 808. This requirement has both an objective and subjective component. *Id.* at 809 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)); *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 751 (11th Cir. 2020) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)). "[T]o be actionable, th[e] behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." *Callahan*, 805 F. App'x at 751 (quoting *Miller*, 277 F.3d at 1276) (alteration and ellipses in original). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Reeves*, 594 F.3d at 809 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). *See also Mendoza*, 195 F.3d at 1246 ("The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment."). In analyzing this issue, courts consider the following non-exhaustive factors: "(1) the frequency of the conduct;

(2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Allen v. Ambu-Stat, LLC*, 799 F. App'x 703, 708 (11th Cir. 2020) (quoting *Mendoza*, 195 F.3d at 1246); *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 734 (11th Cir. 2016) (citing *Reeves*, 594 F.3d at 808-09).

The aforementioned factors weigh heavily against Plaintiff's position. Notably, although she mentions the factors in her Response [DE 40 at 4], she does not attempt to explain how any of them are supposedly satisfied. As to the first factor, the conduct was infrequent. After the first incident (the brushing-up incident) occurred, no further physical contact occurred. Moreover, the alleged sexual gesture incident (where Santizo-Perez fixed his pants) did not occur until approximately a year later, and this incident also happened only a single time. Beyond these two incidents, the only other incidents Plaintiff testified made her feel uncomfortable involved Santizo-Perez allegedly staring at Plaintiff from his car. But the staring incidents were also infrequent, occurring no more than a few times. Overall, the evidence reveals nothing more than isolated events. *See Faragher*, 524 U.S. at 788 ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"). Accordingly, this factor weighs heavily against Plaintiff.

The second factor also weighs against Plaintiff. Aside from the first incident, there was no physical contact. Notably, Plaintiff's Response [DE 40] does not even discuss the alleged staring or the alleged sexual gesture (which lasted no more than a few seconds, *see* PL Depo at 100-01). Instead, it focuses on the first incident. While the first incident, based on Plaintiff's description, was potentially severe, the fact that it was a brief occurrence that never reoccurred, and the context in which it occurred (passing by Plaintiff to enter a small room), mean that the incident does not

establish severe harassment sufficient to meet the exacting standard (even assuming the conduct was intentional). Regardless, even if the brushing-up incident were itself severe as an isolated event, the record is devoid of evidence of severe conduct when all of the alleged conduct (which is accepted as true) is considered collectively and based upon the totality of the circumstances.[3]

The third and fourth factors additionally weigh against Plaintiff. With respect to the third factor, Plaintiff testified that Santizo-Perez did not threaten her and that he had never said anything threatening or harassing to her, PL Depo. at 159-60, and Plaintiff has not otherwise pointed to anything to show how the third factor could or might be satisfied. As to the fourth factor, Plaintiff again does not explain how Santizo-Perez's conduct interfered with her job performance and certainly not that his conduct *unreasonably* interfered. *Cf. Mendoza*, 195 F.3d at 1248 ("Mendoza did not present evidence that Page's conduct was 'physically threatening or humiliating' or that *the cumulative effect* of this conduct 'unreasonably interfered' with Mendoza's job performance." (emphasis added)).

---

[3] In her Response [DE 40], Plaintiff emphasizes that Santizo-Perez is a pervert who was arrested for hiding cameras inside women's restrooms at one or more hospitals where he worked (not at Defendant's workplace). As proof, Plaintiff cites to a local news story. Even assuming Plaintiff has properly placed this so-called "evidence" before the Court and that it is admissible (which is unlikely given potential issues of relevance, hearsay, and unfair prejudice), and assuming the news story presented by Plaintiff is fully accurate, the record is devoid of any evidence showing that Plaintiff was personally impacted by the hidden cameras. Moreover, the record does not show that Plaintiff even knew about the hidden cameras at the time Santizo-Perez allegedly harassed her. Therefore, the conduct underlying Santizo-Perez's arrest, while extremely serious and severe, is irrelevant to Plaintiff's sexual harassment/hostile work environment claim. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014) ("The totality of a plaintiff's workplace circumstances does not include other employees' experiences of which the plaintiff is unaware. Courts conduct the objective assessment from the perspective of a reasonable person in the plaintiff's position, knowing what the plaintiff knew. A reasonable person in the plaintiff's position is not one who knows what the plaintiff learned only after her employment ended or what discovery later revealed." (internal citation omitted)). *See also Stancombe*, 652 F. App'x at 735 n.5.

Moreover, *Mendoza* and other binding case law clearly show that Plaintiff's sexual harassment/hostile work environment claim must be rejected. *See id.* at 1244-52; *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582-86 (11th Cir. 2000), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). In *Mendoza*, the Eleventh Circuit found that the following conduct fell "well short of the level of either severe or pervasive conduct sufficient to alter Mendoza's terms or conditions of employment":

> (1) one instance in which Page said to Mendoza "I'm getting fired up"; (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's "constant" following and staring at Mendoza in a "very obvious fashion."

*Mendoza*, 195 F.3d at 1247. While the single instance of physical contact in this case was worse than the contact in *Mendoza*, the totality of the conduct in this case is no more severe than, and certainly less pervasive than, the totality of the conduct in *Mendoza*.

In *Gupta*, the Eleventh Circuit also found that the "severe or pervasive" element was not satisfied. There, the conduct involved, *inter alia*, (1) frequent calls to the employee at home late at night and on the weekend (asking personal questions during calls), (2) inappropriate comments, (3) staring at the employee's legs, (4) placement of a hand on the employee's thigh (partially on the inside of the thigh), (5) touching the employee's bracelet, (6) touching the employee's ring, (7) lifting the employee's dress, and (8) unbuckling of a belt and lowering of a zipper to tuck in a shirt (in front of the employee). *Gupta*, 212 F.3d at 578-79, 583-86. Again, the conduct in this case is far less pervasive than, and no more severe than, the conduct in *Gupta*.[4]

---

[4] The Eleventh Circuit's non-binding decision in *Stancombe* is also persuasive. There, the Eleventh Circuit rejected the employee's sexual harassment claim where, over a one-month period, a co-worker: (1) hugged the employee and touched his buttocks three times in succession; and (2) grabbed the employee's head and made three pelvic thrusts in his face. *Stancombe*, 652 F. App'x

I do not doubt that Santizo-Perez's conduct was wrong and made Plaintiff uncomfortable (as she, justifiably, testified). However, finding in Plaintiff's favor "would lower the bar of Title VII to punish" conduct below the standard set by the Eleventh Circuit. *Gupta*, 212 F.3d at 586 (citing *Mendoza*, 195 F.3d at 1252 n.10). Accordingly, Count I fails.

## II.     COUNT II – RETALIATION

Defendant is also entitled to summary judgment on Count II. Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by" Title VII, "or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). *See also Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). As Plaintiff has not argued that any direct evidence of retaliatory animus or any convincing mosaic of circumstantial evidence exists, and instead relies generally on circumstantial evidence (primarily alleged temporal proximity), the burden-shifting framework, from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in analyzing Plaintiff's retaliation claim. *See, e.g.*, *Bailey v. Metro Ambulance Servs., Inc.*, No. 19-13513, 2021 WL 1257770, at *8 (11th Cir. Apr. 6, 2021) (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)); *Furcron*, 843 F.3d at 1310 (citations omitted).

Under the burden-shifting framework, Plaintiff must first establish a *prima facie* case by showing "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse

---

at 734. Notably, even though the employee quit after the second incident, the Eleventh Circuit found that "scant evidence" supported the conclusion that the conduct interfered with the employee's job performance, noting that "infrequent incidents are less likely to alter the conditions of employment." *Id.* at 735 (citing *Mendoza*, 195 F.3d at 1249). In this case, the frequency of incidents is comparable. Nevertheless, the conduct in *Stancombe* was more severe than the conduct in this case (or, at the very least, as severe), particularly given that there was an additional incident of physical contact in *Stancombe*, with both incidents involving repeated motions.

[employment] action, and (3) that the adverse action was causally related to the protected activity." *Gogel*, 967 F.3d at 1134 (citations and internal quotation marks omitted). If Plaintiff is able to establish a prima facie case, the burden of production shifts to Defendant to articulate "a legitimate, non-discriminatory reason for the [adverse] employment action." *Id.* at 1135. Defendant's "burden of production at this step is 'exceedingly light.'" *Ellison v. St. Joseph's/Candler Health Sys., Inc.*, 775 F. App'x 634, 644 (11th Cir. 2019) (citing *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060-61 (11th Cir. 1994)). *See also Furcron*, 843 F.3d at 1312. Provided that Defendant articulates a non-discriminatory reason, the burden shifts back to Plaintiff to produce evidence showing that Defendant's reason is pretextual. *Gogel*, 967 F.3d at 1135; *Bailey*, 2021 WL 1257770, at *8. "Significantly, when it comes to retaliation claims, a plaintiff must demonstrate that his participation in protected activity was the 'but-for' cause of the adverse employment action." *Bailey*, 2021 WL 1257770, at *8 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). "[I]t is not enough to show simply that retaliation was a motivating factor among others in the adverse action." *Id.* (citing *Nassar*, 570 U.S. at 360). Instead, Plaintiff must show that she would not have been fired if she had not complained. *Gogel*, 967 F.3d at 1135 (citing *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)). "Importantly, throughout this entire process, the ultimate burden of persuasion remains on" Plaintiff. *Id.* (quoting *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013)).

As discussed herein, Plaintiff fails to establish a *prima facie* case of retaliation because she has not demonstrated a causal connection between her alleged complaint to Rodriguez and her termination. Moreover, even if she had, Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, which Plaintiff has failed to show was pretextual. Therefore, Defendant is entitled to summary judgment on Count II.

### A. *Prima Facie* Case

Whether Plaintiff has established a *prima facie* case of retaliation turns on the third element (causal link). The second element (adverse employment action) is clearly satisfied because Plaintiff was fired, and the first element (protected activity) is also satisfied for purposes of the instant Motion. While the first element is subject to a factual dispute – because the parties dispute whether Plaintiff complained to Rodriguez – the Court must resolve the factual dispute in Plaintiff's favor as she is the non-movant.

Nonetheless, Plaintiff has not satisfied the causal link requirement. She attempts to do so primarily by arguing that the close temporal proximity between news reports of Santizo-Perez's arrest and her termination (approximately a week) is sufficient to establish a causal connection. Plaintiff also notes that her theory of the case is that Rodriguez heard about Santizo-Perez's arrest (implying, without showing, that Rodriguez learned of the arrest before Plaintiff's termination), and that upon learning of the arrest, Rodriguez recalled Plaintiff's alleged complaint to her (from a year earlier), realized that she failed to follow up on the complaint, and decided to terminate Plaintiff to cover up that failure. But this is all speculation unsupported by any record evidence.

As Plaintiff notes, "[t]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). However, "mere temporal proximity, without more, must be 'very close.'" *Id.* A gap of 3 months or more between the protected expression and the adverse employment action is generally insufficient to establish a causal connection. *Id.*

As an initial matter, Plaintiff's temporal-proximity argument appears to be misplaced. The alleged protected expression occurred at least one year before her termination. That does not come

close to establishing temporal proximity. However, Plaintiff's real argument – even if not explicitly spelled out – is that the date Santizo-Perez's arrest was reported should be the relevant date (to measure from the date Plaintiff was terminated) instead of the date Plaintiff allegedly complained to Rodriguez. If correct, Plaintiff would be able to establish temporal proximity because the arrest and termination dates were very close in time (roughly a week apart). However, Plaintiff has not provided a single case to support her contention that the relevant date to compare can be a date other than that on which the protected expression occurred. Instead, applicable case law, including *Thomas* (on which Plaintiff relies), looks at the date of the protected activity and the date of the adverse employment action. *See* 506 F.3d at 1364.

Understandably, Plaintiff's theory may be somewhat different from the ordinary theory in this context because she contends (based on mere supposition) that news of Santizo-Perez's arrest was the catalyst that led to a cover-up. Nevertheless, even assuming the proximity between the arrest and Plaintiff's termination has some circumstantial relevance, it is nothing more than a mere scintilla of evidence and is plainly insufficient to establish a causal connection or to create a jury issue, particularly given that Plaintiff presents no other evidence in support of her causal connection argument. While Plaintiff does present some evidence to show that Rodriguez may have heard about Santizo-Perez's arrest around the time of Plaintiff's termination, it is not at all probative. That is because the undisputed evidence reveals that Rodriguez played absolutely no role in the *decision* to terminate Plaintiff. Instead, Rodriguez learned of the decision from Cambrelen (Plaintiff's direct supervisor) after the decision had already been made. Moreover, the undisputed facts reveal that Cambrelen, who took part in the decision to terminate Plaintiff's employment, had not even heard of Santizo-Perez (or the arrest of a PET Lynn employee) prior to

Plaintiff's termination.[5] Further, aside from Rodriguez, there is no evidence to show that any manager, supervisor, or other employee of Defendant (including anyone involved in the decision to terminate Plaintiff's employment) had any knowledge of Plaintiff's alleged complaint prior to her termination. Significantly, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). *See also Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1054 (11th Cir. 2020).

For the foregoing reasons, Plaintiff has failed to satisfy the causal connection element and, therefore, has failed to establish a *prima facie* case of retaliation.

**B. Legitimate Reason and Pretext**

Even if Plaintiff had established a *prima facie* case of retaliation, her retaliation claim would still fail because she has not demonstrated that Defendant's legitimate reason was pretextual. Defendant explains that Plaintiff's employment was terminated because, within a year after receiving a Final Written Warning for causing an accident and leaving the scene before reporting it (contrary to company policy), Plaintiff committed a delivery error and, just a few days later, engaged in a workplace altercation. Importantly, as noted above, Defendant only has the burden of *production* to articulate a legitimate, non-discriminatory reason (and only if Plaintiff establishes a *prima facie* case); the burden of *persuasion* remains with Plaintiff. Defendant has undoubtedly satisfied its light burden of production.

---

[5] It is also worth noting that while the final decision to terminate Plaintiff was made on October 23, 2019, Cambrelen first involved human resources in the potential termination of Plaintiff in late September 2019, weeks before Santizo-Perez was arrested. *See* Cambrelen Depo. at 12-13.

Notwithstanding Defendant's articulation of a legitimate reason for the termination of Plaintiff's employment, a reason that has remained consistent since Plaintiff termination, Plaintiff has made little effort to establish pretext. Notably, the word "pretext" does not even appear in Plaintiff's Response [DE 40]. Regardless, the arguments in Plaintiff's Response (considered in the context of pretext) and the evidence of record fall woefully short of establishing pretext.

Because Defendant's "proffered reason is one that *might* motivate a reasonable employer, [Plaintiff] must meet that reason *head on* and rebut it." *Gogel*, 967 F.3d at 1136 (emphasis added) (citations omitted). Establishing pretext at the summary judgment stage requires showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (citation omitted). Ultimately, to demonstrate pretext, Plaintiff must show both that Defendant's reason for termination is false and that retaliation was the real reason she was terminated. *Id.*; *Hornsby-Culpepper*, 906 F.3d at 1312; *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) ("[A] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" (quoting *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006))). "When an employer asserts that it has fired an employee based on reported workplace incidents, the employee must not only dispute that those incidents occurred, but also call into question the employer's sincere belief that they occurred." *Lewis v. Blue Bird Corp.*, 835 F. App'x 526, 530 (11th Cir. 2020) (citing *Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005)).

Here, Plaintiff has not demonstrated anything inconsistent, incoherent, contradictory, or implausible regarding Defendant's stated reason for termination, and Plaintiff cannot show that the real reason for termination was anything other than the reason articulated by Defendant. While

16

Plaintiff attempts to characterize the vehicle accident somewhat differently than Defendant, her deposition testimony nevertheless makes clear that she caused the accident and left the scene without reporting it (even if she attempts to excuse why she did so). Similarly, her deposition testimony and the other summary judgment evidence make clear that the altercation with the coworker and the delivery error involving nuclear waste occurred. While Plaintiff argues that the delivery error did not cause any prejudice, the evidence shows otherwise. Regardless, the issue of prejudice is ultimately irrelevant. The fact is that she committed an error (which she acknowledged), and Defendant was free to discipline her for that error. The same goes for the altercation notwithstanding Plaintiff's attempt to lay the blame at the feet of the coworker. *See Gogel*, 967 F.3d at 1148 ("The relevant inquiry is therefore whether the employer in good faith believed that the employee had engaged in the conduct that led the employer to discipline the employee. . . . [T]he role of this Court is to prevent unlawful [Title VII] practices, not to act as a super personnel department that second-guesses employers' business judgments. Our sole concern is whether unlawful discriminatory [or retaliatory] animus motivates a challenged employment decision. . . . An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory [or retaliatory] reason." (internal quotation marks and citations omitted)).

      Ultimately, Plaintiff has not challenged Defendant's reason for termination head-on, has not shown that Defendant's reason for termination was false, and has not shown that retaliation was the real reason for termination. Thus, even if she had established a *prima facie* case of retaliation (she did not), she has failed to establish pretext.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT** the Motion [DE 28].[6]

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 17th day of April 2021.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

---

[6] The wherefore clause of the Motion seeks an award of attorneys' fees. However, the Motion does not otherwise address the issue of attorneys' fees. If Defendant believes it is entitled to a fee award, it must file a separate fee motion.